# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEURAL AI, LLC, | |
| Plaintiff, | Civil Action No. 7:24-cv-00221-ADA-DTG |
| v. | JURY TRIAL DEMANDED |
| NVIDIA CORPORATION, | |
| Defendant. | |

**PLAINTIFF NEURAL AI, LLC'S NOTICE OF SERVICE**
**OF SUBPOENA TO AMAZON.COM, INC. (AMAZON)**

PLEASE TAKE NOTICE that Plaintiff Neural AI, LLC ("Neural AI") will serve a subpoena for Subpoena to Produce Documents, Information, or Objects on Amazon.com, Inc. ("Amazon"). The subpoena is attached hereto as Attachment 1.

PLEASE TAKE FURTHER NOTICE that Amazon is requested to produce all documents and things in its possession, custody, or control requested in Exhibit A of the subpoena by 12:00 p.m. Central Time on November 7, 2025, via email or to Planet Depos – Downtown Austin c/o Lexitas Legal, 100 Congress Ave, Ste. 2000, Austin, TX 78701, or alternatively at a mutually agreed upon time and location.

Dated: October 15, 2025

Respectfully submitted,

 /s/ *Emily Portuguese*
Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni

Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 5125174
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

Mark D. Siegmund
Texas State Bar No. 24117055
CHERRY JOHSON SIEGMUND
JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
msiegmund@cjsjlaw.com

Max Ciccarelli
Texas State Bar No. 00787242
CICCARELLI LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Max@CiccarelliLawFirm.com

*Attorneys for Plaintiff Neural AI, LLC*

## CERTIFICATE OF SERVICE

I certify that on October 15, 2025 a true and correct copy of Neural AI's Subpoena to Produce Documents, Information, or Objects on Amazon.com, Inc. has been served on the following counsel of record via email as indicated below:

L. Kieran Kieckhefer
Casey McCracken
Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center Suite 2600
San Francisco, CA 94111-3715
kkieckhefer@gibsondunn.com
cmccracken@gibsondunn.com
jschung@gibsondunn.com

Brian Rosenthal
Ahmed ElDessouki
Vivian Lu
Paul Torchia
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
brosenthal@gibsondunn.com
aeldessouki@gibsondunn.com
vlu@gibsondunn.com
ptorchia@gibsondunn.com

Lillian J. Mao
GIBSON DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
lmao@gibsondunn.com

Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1700 M St. N.W.
Washington, DC 20036
bburoker@gibsondunn.com

Nathan Curtis
GIBSON DUNN & CRUTCHER LLP
2001 Ross Ave., Ste. 2100

Dallas, TX 75201
ncurtis@gibsondunn.com

Barry K. Shelton
Bradley D. Coburn
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734-4775
bshelton@sheltoncoburn.com

/s/ *Emily Portuguese*
Emily Portuguese

# **<u>Attachment 1</u>**

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Texas

| | |
|---|---|
| NEURAL AI, LLC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 7:24-cv-00221-ADA-DTG |
| NVIDIA CORPORATION | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Amazon.com, Inc., c/o Corporation Service Company,
300 Deschutes Way SW, Ste 208 MC-CS1, Tumwater, WA 98501

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Exhibit A

| Place: Planet Depos – Downtown Austin c/o Lexitas Legal, 100 Congress Ave, Ste. 2000, Austin, TX 78701 | Date and Time: 11/07/2025 12:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/15/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Emily Portuguese |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Neural AI, LLC , who issues or requests this subpoena, are:

Emily Portuguese, Susman Godfrey LLP, One Manhattan West, 50th Floor, New York, New York 10001
eportuguese@susmangodfrey.com, 212-729-2082

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 7:24-cv-00221-ADA-DTG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1.    The term "NVIDIA GPU-Acceleration Hardware" means the following devices: DGX line of supercomputers and servers (including at least DGX B300, DGX B200, DGX GB200, DGX GB300, DGX Spark, DGX Station, DGX SuperPOD with GB300, DGX SuperPOD with GB200, DGX H200, DGX H100, DGX BasePOD, DGX SuperPOD with H200, DGX A100), HGX line of supercomputers and servers (including at least HGX B300, HGX B200, HGX H100, HGX H200, Eos SuperPOD), OVX line of supercomputers and servers (including at least OVX L40S), EGX line of supercomputers and servers (including at least EGX Server with Quadro RTX A6000, EGX Server with A40, EGX Server with Quadro RTX 8000, EGX Server with Quadro RTX 6000), GB300 NVL72, GB200 NVL72; Nvidia's GPU accelerators and superchips, including those with NVIDIA's Blackwell, Hopper, Ada Lovelace, Ampere, Turing, Volta, Pascal, and Maxwell GPU architectures, including at least, RTX PRO 6000 Server Edition, RTX PRO 6000 Workstation, RTX PRO 6000 Max-Q Workstation, RTX PRO 5000, RTX PRO 4500, RTX PRO 4000, RTX PRO 3000, RTX PRO 2000, RTX PRO 1000, RTX PRO 500, GB300, GB200, H100, H200, GH200, GH100, L40, L40S, L4, RTX 6000, RTX 6000 Ada, RTX 5000, Ada, RTX 4500 Ada, RTX 4000 Ada, RTX 4000 SFF, RTX 3500, RTX 3000, RTX 2000, RTX 1000, RTX 500, RTX 4090, RTX 4080 SUPER, RTX 4070 Ti SUPER, RTX 4070 SUPER, RTX 4070, RTX 4060 Ti, and RTX 4060, GeForce RTX 4090 Laptop GPU, GeForce RTX 4080 Laptop GPU, GeForce RTX 4070 Laptop GPU, GeForce RTX 4060 Laptop GPU, GeForce RTX 4050 Laptop GPU, A100, A40, A30, A16, A10, A2, A800 40GB Active, RTX A6000, RTX A5500, RTX A5000, RTX A4500, RTX A4000, RTX A2000, RTX A2000 12GB, RTX A1000, RTX A400, RTX A5500, RTX A4500, RTX A3000 12GB, RTX A2000 8GB, RTX A1000 6GB, RTX A500,

GeForce RTX 3090 Ti, GeForce RTX 3090, GeForce RTX 3080 Ti, GeForce RTX 3080, GeForce RTX 3070 Ti, GeForce RTX 3070, GeForce RTX 3060 Ti, GeForce RTX 3060, GeForce RTX 3050 (8 GB), GeForce RTX 3050 (6 GB), GeForce RTX 3080 Ti Laptop GPU, GeForce RTX 3080 Laptop GPU, GeForce RTX 3070 Ti Laptop GPU, GeForce RTX 3070 Laptop GPU, GeForce RTX 3060 Laptop GPU, GeForce RTX 3050 Ti Laptop GPU, GeForce RTX 3050 Laptop GPU, GeForce MX570 Laptop GPU, Tesla T4 GPUs, Quadro RTX 8000, Quadro RTX 6000, Quadro RTX 8000, Quadro RTX 6000, Quadro RTX 5000, Quadro RTX 4000, Quadro RTX 3000, Quadro T2000, T1000 8GB, T1200, Quadrio T1000, T1000 (4GB), T600, T550, T500 T400, T400 4GB, Titan RTX, GeForce RTX 2080 Ti, GeForce RTX 2080, Super, GeForce RTX 2080, GeForce RTX 2070 Super, GeForce RTX 2070, GeForce RTX 2060 Super, GeForce RTX 2060, GeForce RTX 2500, GeForce GTX 1660 Ti, GeForce GTX 1660 Super, GeForce GTX 1660, GeForce GTX 1650 Ti, GeForce GTX 1650 Super, GeForce GTX 1650 (G5), GeForce GTX 1650 (G6), GeForce GTX 1650, GeForce GTX 1630, GeForce MX550, GeForce MX450, GeForce MX430, Tesla V100, Quadro GV100, Titan V GPU, Tesla P100, P40, P4, Quadro GP100, Quadro P6000, Quadro P5200, Quadro P5000, Quadro P4200, Quadro P4000, Quadro P3200, Quadro P3000, Quadro P2200, Quadro P2000, Quadro P1000, Quadro P620, Quadro P600, Quadro P520, Quadro P500, Quadro P400, Titan Xp, Titan X, GeForce GTX 1080 Ti, GeForce GTX 1080, GeForce GTX 1070 Ti, GeForce GTX 1070, GeForce GTX 1060, GeForce GTX 1050 Ti, GeForce GTX 1050, GeForce MX300, GeForce MX200, GeForce MX150, Tesla M60, M40, M10, Quadro M6000 24GB, Quadro M6000 (12GB), Quadro M5000, Quadro M5000M, Quadro M5500, Quadro M4000, Quadro M4000M, Quadro M3000M, Quadro M2200, Quadro M2000, Quadro M2000M, Quadro M1200, Quadro M1000M, Quadro M620, Quadro M600M, Quadro M520, Quadro M500M, NVS 810, Tesla M6, GTX Titan X, GeForce GTX 980Ti, GeForce GTX 980,

GeForce GTX 970, GeForce GTX 960, GeForce GTX 980M, GeForce GTX 970M, GeForce GTX 965M, GeForce GTX 960M, GeForce GTX 950M, GeForce GTX 750 Ti, GeForce GTX 750, GeForce MX130, and GeForce MX110, any and all variations of the aforementioned products (including at least products having different options for number of GPUs).

2.      The term "NVIDIA GPU-Acceleration Software" means any and all software, libraries, toolkits, APIs, SDKs, platforms, orchestration environments, cloud services, or application frameworks developed, sold, licensed, maintained, or distributed by NVIDIA Corporation that are designed for, dependent upon, or enable GPU-accelerated computing, processing, training, inference, rendering, simulation, or analytics. This includes, without limitation: CUDA, including the CUDA Toolkit, CUDA Runtime, and all associated APIs; CUDA-X libraries and modules, including but not limited to cuDNN, cuBLAS, cuSPARSE, cuFFT, cuTENSOR, cuGraph, cuQuantum, and NCCL;  TensorRT, Triton Inference Server, and other deep learning inference optimization tools; NVIDIA SDK Manager and related deployment and configuration tools; NVIDIA AI Enterprise, including any included models, NIM microservices, and management utilities; NVIDIA Base Command, Base Command Platform, and Base Command Manager, including any software components used for managing multi-GPU clusters or DGX infrastructure; NVIDIA Omniverse, including Omniverse Kit, Omniverse Code, and extensions for rendering, physics simulation, and synthetic data generation; NVIDIA Isaac SDK and Isaac Sim, including simulation, perception, planning, and robotics middleware layers; NVIDIA Drive, including but not limited to DriveWorks, Drive OS, Drive Sim, and associated autonomous vehicle development toolchains; NVIDIA Clara, including Clara Train, Clara Deploy, Clara Parabricks, and other Clara health, genomics, or imaging tools; NVIDIA NGC (NVIDIA GPU Cloud), including containerized applications, pretrained models, frameworks, and pipelines

made available through NGC; NVIDIA AI Foundation tools, models, and APIs, including foundation models, model training pipelines, retrieval-augmented generation (RAG) systems, or guardrails; and any other software products, services, packages, APIs, SDKs, or libraries developed or licensed by NVIDIA that provide, rely on, or facilitate GPU acceleration.

3.      The term "Litigation" means *Neural AI, LLC v. NVIDIA Corporation*, No. 7:24-cv-00221-ADA-DTG, filed in the United States District Court for the Western District of Texas on September 13, 2024, including any and all counterclaims asserted by NVIDIA against Neural AI.

4.      The terms "and" and "or" are not intended to be read disjunctively but rather conjunctively unless the context of a particular request clearly indicates otherwise. "Or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

5.      The terms "any" or "each" should be understood to include and encompass "all."

6.      The terms "Asserted Patents" and "Patents-in-Suit" mean U.S. Patent Nos. 8,648,867, RE49,461, and RE48,438. Each reference to the Asserted Patents is intended to include the application on which it issued and its entire prosecution history. Any term in these requests that is also a claim term in the Asserted Patents is to be accorded its plain and ordinary meaning as understood in the Asserted Patents and receive any construction determined by the Court.

7.      The term "Communication(s)" means any transmission of information by any means or medium, including without limitation: (a) any written letter, memorandum, or other document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or

informal.

8. The terms "concerning," "related to" or "relating to", and "regarding" and any variation of these terms mean analyzing, alluding to, concerning, considering, commenting on, consulting, comprising, containing, contradicting, describing, dealing with, discussing, establishing, evidencing, identifying, involving, noting, recording, reporting on, relating to, reflecting, referring to, regarding, stating, showing, studying, mentioning, memorializing, or pertaining to, directly or indirectly, in whole or in part.

9. The term "CPU(s)" means Central Processing Unit(s).

10. The term "Document(s)" shall have the broadest meaning possible under Federal Rules 26 and 34 and shall include without limitation: documents, Electronically Stored Information, communications in written, electronic, and recorded form, and tangible things. A draft or non-identical copy of a document shall be considered a separate document within the meaning of the term "document." Any comment, notation, or other marking shall be sufficient to distinguish documents that are otherwise similar in appearance and to make them separate documents for purposes of your response. Any preliminary form, intermediate form, superseded version, or amendment of any document is to be considered a separate document.

11. The term "GPU(s)" means Graphics Processing Unit(s).

12. The terms "include" and "including" mean including without limitation.

13. The term "Neural AI," "NAI," or "Plaintiff" means Plaintiff Neural AI, LLC.

14. The term "NVIDIA" means Defendant NVIDIA Corporation, its predecessors, present and former directors, officers, accountants, affiliates, attorneys, partners, managers, agents, employees, representatives, in-house and outside counsel, and any other person or entity acting on behalf of or under control of Defendant NVIDIA Corporation.

15.     The term "person(s)" means and includes natural persons and formal or informal entities and organizations, including public and private corporations, partnerships, professional corporations, limited liability companies, business trusts, banking institutions, associations, firms, joint ventures, commissions, bureaus, departments, and any other legal entity, including any  divisions, subsidiaries, departments, and other units thereof.

16.     The term "Source Code" means human-readable instructions written in a programming language, including all comments, annotations, declarations, functions, classes, and other components used to define the behavior of a software program. For purposes of these interrogatories, "Source Code" includes all associated files necessary to understand, compile, and execute the code, such as scripts, header files, makefiles, configuration files, and documentation. Unless otherwise stated, "Source Code" includes all versions and revisions relevant to the time periods and subject matter described in each interrogatory.

17.     The term "Third Party" or "Third Parties" means any Person other than You, NVIDIA, and Neural AI.

18.     The terms "You," "Your," or "Amazon" refer to Amazon.com, Inc., including but not limited to its predecessors, successors, parents, subsidiaries, divisions, affiliates, and all past or present directors, officers, partners, managers, employees, contractors, agents, representatives, accountants, consultants, in-house and outside counsel, and any other person or entity acting or purporting to act on its behalf or subject to its control. This definition expressly includes, without limitation, Amazon Web Services, Inc., Amazon.com Services LLC, Amazon Robotics LLC, Zoox, Inc., and any other Amazon parent, subsidiary, affiliate, or other related entity that has used, licensed, deployed, evaluated, or integrated NVIDIA Hardware and/or NVIDIA Software.

19.     The use of the singular form of any word includes the plural and vice versa.

20.     These Requests seek the production of all documents, electronically stored information ("ESI"), and tangible things in your possession, custody, or control, as that phrase is used in Federal Rule of Civil Procedure 34, as of the date of compliance with this subpoena and that come into your possession, custody, or control at any time prior to production. This includes materials held by You directly, as well as by Your affiliates, subsidiaries, agents, representatives, or any other person or entity acting on Your behalf.

21.     If You are aware of the existence (past or present) of any responsive documents, ESI, or tangible items that are not in Your current possession, custody, or control, You must identify such materials and provide:

      a.     A description of the item(s);

      b.     The name and contact information of the person or entity currently believed to have possession, custody, or control; and

      c.     The reason You are unable to produce the material(s).

22.     If You believe that no responsive documents, ESI, or tangible things exist in response to a particular request, You must state so in writing with respect to that request.

23.     If You withhold any document, ESI, or portion thereof based on a claim of attorney-client privilege, work product doctrine, or any other legal protection, You must produce a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

24.     You must produce all documents and ESI: as they are kept in the usual course of business or organized and labeled to correspond to the categories in this subpoena, as required under FRCP 34(b)(2)(E); in their native electronic format (with original metadata intact) wherever possible, or as searchable, OCR-scanned PDFs with corresponding load files; with complete family groupings (e.g., attachments must be produced with their parent emails/documents); and in

the same folders or directories in which they were maintained, preserving original file structures and naming conventions.

25.     You must maintain and produce a record of the source of each document or ESI item produced, including:

a.     The file path or directory location;

b.     The name of the custodian (individual, team, or department) from whose files the document was collected;

c.     The system or platform (e.g., email server, shared drive, cloud service) from which the document was obtained.

This information may be provided in metadata load files, a source log, or other mutually agreed format. This instruction is consistent with Federal Rule of Civil Procedure 34(b)(2)(E) and proportional discovery principles under Rule 26(b)(1). If any of the above information is not reasonably available or unduly burdensome to collect, You must so state and explain the basis for that assertion.

26.     For all ESI, You must preserve and produce standard metadata fields, including but not limited to: filename, filepath, author, date created, date last modified, recipients, sender, subject line (for emails), and document type. You must not degrade or alter metadata through processing or production.

27.     You are under a continuing obligation to supplement or correct Your production if You discover or obtain additional responsive materials prior to the close of discovery or the resolution of this matter.

28.     Unless otherwise stated, the relevant period is from September 13, 2018 to the present.

29.     Unless otherwise stated, all requests herein are limited to documents, electronically stored information, and tangible things that relate to NVIDIA GPU-Acceleration Hardware or

NVIDIA GPU-Acceleration Software that were:

     a.     purchased, acquired, licensed, used, implemented, deployed, tested, or evaluated within the United States, or

     b.     purchased, acquired, licensed, or used for the purpose of supporting, enabling, or operating any facility, system, team, data center, personnel, product, service, customer, or business activity located in or directed toward the United States.

This instruction is intended to encompass both U.S.-based activity and non-U.S. activity that directly supports or enables U.S. operations or usage.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Documents sufficient to identify all types of NVIDIA GPU-Acceleration Hardware purchased, acquired, or deployed by You.

2. Documents sufficient to identify the quantity, identity, and price of NVIDIA GPU-Acceleration Hardware (including model numbers) purchased, deployed, tested, or used by You.

3. Documents sufficient to identify all types of NVIDIA GPU-Acceleration Software acquired, licensed, or used by You, including from the NGC catalog, NVIDIA AI Enterprise, or otherwise.

4. Documents sufficient to identify the quantity and identity of NVIDIA GPU-Acceleration Software (including model numbers) acquired, licensed, or used by You.

5. Documents sufficient to identify any products, features, or services offered by You that depended on NVIDIA GPU-Acceleration Software or NVIDIA GPU-Acceleration Hardware.

6. Documents sufficient to identify all agreements, license terms, purchase orders, or other transactional documents relating to the acquisition or use of any NVIDIA GPU-Acceleration

Hardware or NVIDIA GPU-Acceleration Software between You and NVIDIA, and the terms of those agreements.

7. Technical documentation, architectural diagrams, source code excerpts, or internal presentations sufficient to show how You implemented, incorporated, or otherwise used any NVIDIA GPU-Acceleration Software in any GPU-accelerated system.

8. Source Code, configuration files, or implementation artifacts sufficient to show how NVIDIA GPU-Acceleration Software was integrated into Your systems, applications, or software pipelines.

9. Documents sufficient to show how Your application-layer software invokes or interacts with NVIDIA GPU-Acceleration Software components, including the types of workloads, models, or applications executed using NVIDIA GPU-Acceleration Software.

10. Internal development notes, version control records, Git repositories, commit logs, or related documents sufficient to show all derivative or modified source code created by You based on, incorporating, extending, or wrapping NVIDIA GPU-Acceleration Software.

11. Documents sufficient to show all uses of NVLink, MIG (Multi-Instance GPU), or any GPU orchestration software used in conjunction with NVIDIA GPU-Acceleration Software.

12. Communications between You and NVIDIA relating to the setup, integration, customization, support, or use of any NVIDIA GPU-Acceleration Software.

13. Internal documents, presentations, or reports reflecting the performance benefits, functional improvements, or business value derived from using NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware.

14. Revenue, usage, or subscription data for Your services or software platforms that relied on NVIDIA GPU-Acceleration Software.

15. Benchmark results, technical evaluations, or cost-benefit analyses relating to Your use of NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware.

16. Marketing, customer-facing, or internal communications describing or referencing Your reliance on NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware or toolkits for performance, scalability, or innovation.

17. Documents sufficient to identify any third-party software, libraries, or frameworks that were used alongside or integrated with NVIDIA GPU-Acceleration Software.

18. Documents sufficient to show how NVIDIA GPU-Acceleration Software interacted with other vendors' frameworks or toolchains.

19. Internal documentation, including but not limited to wiki pages, collaborative documentation platforms, engineering knowledge bases, or similar repositories, sufficient to show the design, development, architecture, technical functionality, or operation of any GPU-accelerated software, system, or pipeline that uses, incorporates, interfaces with, or was developed in connection with any NVIDIA GPU-Acceleration Software.

20. All documents and communications between You and NVIDIA, or between You and any Third Party, referring or relating to Neurala, Inc., Neural AI, or the Litigation, including but not limited to emails, memoranda, contracts, or agreements.