**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **NEURAL AI, LLC,** | |
| **Petitioner,** | **Case No. 7:26-mc-00241** |
| **v.** | **[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG]** |
| **AMAZON.COM, INC.,** | |
| **Respondent.** | |

**MEMORANDUM IN RESPONSE TO PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY AMAZON.COM, INC.**

### I.    INTRODUCTION

Neural AI, LLC's ("NAI") Motion should be denied for two reasons. First, the subpoena is invalid on its face because it demands a place of compliance that is not within 100 miles of Amazon's headquarters or relevant document custodians; i.e., not where any responsive documents will be found. Second, no disputes are ripe for decision. In response to non-party Amazon's objections to NAI's overbroad subpoena, the parties conferred and discussed Amazon producing one thing and only one thing: a spreadsheet containing a report of the volume of accused NVIDIA GPUs configured in one of three allegedly relevant ways. During the June 17 hearing, Amazon confirmed it had agreed to complete its production of this information by June 26. However, two days prior to June 26, NAI filed its Motion. Amazon produced the volume information on June 26, mooting NAI's motion as it relates to the volume information.

Prior to filing the Motion, NAI did not confer with Amazon regarding any other issues. NAI's failure to meet and confer on these issues violates Local Civil Rule CV-7(g) (meet and confer requirement) and Fed. R. Civ. P. 45(d)(1) (NAI must "take reasonable steps to avoid imposing undue burden or expense on" Amazon). In the June 17 hearing, the Court ordered NAI to confer with Dell to more precisely define various disputes on similar requests). NAI has no excuse for not conferring here. The Court should deny NAI's motion.

## II.    FACTUAL BACKGROUND

On October 15, 2025, NAI served its subpoena setting the place of compliance as Austin, Texas. Dkt. 1-3, at 2.[1] NAI's subpoena contained 20 requests amounting to discovery akin to that which would be served on a party in patent litigation. Dkt. 1-3. On November 13, 2025, Amazon objected that NAI's requests were facially overly broad, unduly burdensome, and sought irrelevant information. Importantly, Amazon stated that it needed more information before it could even conduct a search. *See generally* Dkt. 1-6. Amazon further objected "to the subpoena as improper because the demanded place of production is not within 100 miles of Seattle, Washington, where Amazon resides and regularly transacts business in person." *Id*. at 4.

On November 19, 2025, the parties conferred, and Amazon "explained that we needed more information to conduct a search[,]" including at a minimum the identification of relevant products and the information NAI sought about those products that was unavailable from NVIDIA. Dkt. 1-7, at 9. NAI did not dispute that Amazon needed this information, and explained that NAI was "still pursuing discovery from defendant and [was] working to better identify the products [NVIDIA] supplied . . . that were relevant, as well as what [NAI] needed from [Amazon] about those products that [NAI] couldn't get from defendant." *Id*. After months of silence, on April 3, 2026, NAI asked Amazon for an update, including whether "Amazon . . . will search for and produce documents responsive to each of the subpoena requests." *Id.* at 10. Amazon reminded NAI that Amazon was awaiting the information NAI agreed to provide last November. *Id.* at 9. Namely, Amazon stated that "[w]hen we last spoke five months ago, we explained that we needed more information to conduct a search" and NAI "agreed to circle back with [Amazon] once you had that information." *Id*.

On April 13, 2026, the parties again conferred, and Amazon again reminded NAI's counsel what NAI had agreed to provide back in November 2025. Dkt. 1-7, at 6. On April 27, 2026, for the first time, NAI provided Amazon with the listing of relevant products, and the configuration

---

[1] NAI is plaintiff in the underlying patent dispute with defendant NVIDIA.

that NAI contended was relevant in its litigation with NVIDIA[2]. *Id*. As a result, NAI spent five and half months—from when NAI served its subpoena on October 13, 2025, to April 27, 2026—to provide Amazon the information needed to conduct a search. Once Amazon had the information needed to start a search, it did so.

On May 21, 2026, Amazon shared its findings from Amazon's preliminary investigation: the accused computer chips were potentially used in many places across the company, and tracking down each one, how it was used, and how it was configured was not realistically possible. Byer Declaration of Benjamin J. Byer ("Byer Decl.") ¶ 3. Namely, asking a cloud provider to track down this information for many thousands of GPUs is akin to asking an automative company to track down every bolt and produce documents showing how each was used. *Id.* Amazon asked NAI whether NAI could narrow or focus the requests in any way. NAI refused and stated NAI would simply go to the court rather than meaningfully confer. *Id.* Amazon nonetheless agreed to look for ways to provide information about the volume of the accused products that were used in one of the three identified configurations. *Id.* NAI requested that Amazon provide a date certain for this production, but NAI did not request any other information. *Id.* Amazon explained that since NAI had only just provided the information needed to begin the search, Amazon could not yet commit to when it would be completed.

On June 1, 2026, rather than engage in any discussion, NAI simply sent Amazon a discovery dispute chart and demanded Amazon either respond to the chart or "confirm in writing by June 8 what categories of documents [Amazon] will agree to search for and produce. . . along with the timeline for completing that production." Dkt. 1-7, at 3. On June 4, 2026, Amazon responded that Amazon would agree to compete the reasonable search the parties had discussed and provide the results "three weeks from tomorrow" (i.e., June 26, 2026). In a final effort to look for a cooperative resolution, Amazon again requested a meet and confer. *Id.* at 2.

---

[2] NAI also dropped certain requests to which Amazon had objected. *Id*. Dropping improper requests, however, did not meaningfully narrow the subpoena.

3

On June 5, 2026, the parties conferred, and Amazon explained that based on a reasonable search Amazon did not have documents that provided company-wide visibility into the usage NAI sought, but offered as an alternative to conduct a search and compile into a spreadsheet data showing for each accused NVIDIA GPUs the volume configured in one of the three ways NAI identified as relevant. Byer Decl. ¶ 4. When Amazon asked NAI's counsel whether NAI felt Amazon should be doing anything more, "NAI was unable to identify anything it believed [Amazon] should be doing that it hadn't already agreed to do." Byer Decl., Ex. A, at 1. Although Amazon was "conducting the search [the parties] discussed—tracking down where, how, and in what volume the accused GPUs are used[,]" NAI refused to withdraw its discovery dispute chart. Byer Decl, Ex. A, at 2.

On June 17, 2026, the Court held a hearing for the discovery disputes NAI had with Dell, Microsoft, and Amazon, all of whom NAI had served with similar subpoenas. Dkt. 1-8. When addressing NAI's dispute with Dell, the Court stated that although some requests to Dell appeared to cover some relevant information, "the scope of . . . many of them is probably more broad than necessary" and that the requested discovery "could easily become disproportionate to the benefits that would be obtained from the information." Byer Decl., Ex. B (June 17, 2026 Tr. of Disc. H'rg ("Transcript") at 22:6-7; 23:3-5). It therefore ordered Dell and NAI to meet and confer on each request to more precisely define their dispute. Byer Decl., Ex. B (Transcript at 24:4-6).

At the hearing, Amazon's counsel explained it had agreed to produce by June 26 as the parties had discussed and confirmed Amazon's commitment to work with NAI if NAI felt something was missing. Byer Decl., Ex. B (Transcript at 34:10-35:22). The Court also agreed with Amazon that the discovery dispute statement was the improper mechanism to hear the dispute given Amazon's objection to it.

On Wednesday, June 24, 2026—two days before Amazon's agreed production—NAI filed this Motion. On June 26, 2026, Amazon made its agreed production. Byer Decl. ¶ 5. NAI has neither requested a meet and confer nor contacted Amazon stating that it believes something is missing from Amazon's production. Byer Decl. ¶ 6.

## III.    ARGUMENT

NAI's Motion should be denied for two reasons. First, the underlying subpoena fails to identify a place of compliance that satisfies Rule 45's restriction. Second, NAI fails to present a ripe dispute for this Court.

### A.    NAI Has Moved to Compel in The Wrong District.

Rule 45 permits a requesting party to set the place of compliance "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). NAI does not argue Amazon.com, Inc. (the entity it subpoenaed) is a resident of Texas or that it is somehow employed there. NAI instead claims Amazon.com, Inc. "regularly transacts business" within 100 miles of Austin because Amazon generally has a corporate office and unrelated job postings in Austin. Rule 45 does not permit a requesting party to paint with such broad brush, forcing a non-party to produce documents at a location having no connection to the documents requested.

Under Rule 45, the relevant business activities are those tethered to the location "'[1] where the corporation is headquartered or [2] the ***custodian*** of records resides, is employed, or regularly transacts business in person.'" *Cleary v. Kaleida Health*, 2024 WL 1297708, at *3 (W.D.N.Y. 2024) (quoting 9 Moore's Federal Practice § 45.25[2] (Matthew Bender 3d ed.)); *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (requiring that the subpoena have a place of compliance at the location where "custodians of records reside, are employed, and regularly transact business in person."). In other words, the question is not where an entity is somehow employed or regularly transacted business in person, but where the custodians of records are employed or regularly transacts business in person. *Europlay*, 323 F.R.D. at 629 (emphasis added) (analyzing whether the non-party's "***custodians of records*** reside, are employed, and regularly transact business in person"). This follows from a plain reading of Rule 45, as it makes no sense to consider an entity's employment or where it conducts business "in person."

As a result, courts have squarely rejected the argument that the existence of an office within a district makes that district a proper Rule 45 place of compliance. *Dellaportas v. Shahin*, 2025

WL 3019810, at *1–2 (S.D.N.Y. Oct. 29, 2025), *adhered to on reconsideration*, 2025 WL 3456400 (S.D.N.Y. Dec. 2, 2025) (finding that a motion to compel should be heard in the district where the "employees who would be responsible for searching and producing information responsive to Plaintiff's subpoena are."). NAI also suggests that a place of compliance is where a party has job postings. Mot. at 6 (citing Dkt. 1-5). This argument misses the point. NAI cites no evidence that any of those job postings are for Amazon.com, Inc. (the entity subpoenaed), much less evidence suggesting Amazon.com, Inc.'s custodians of relevant information are located in Texas. NAI has therefore failed to carry its burden to show it has satisfied Rule 45 or that its subpoena is enforceable in this District. *See Cruz v. AerSale, Inc.*, 2025 WL 1426884, at *4–6 (D.N.M. 2025) (denying motion to compel where the movant failed to establish the proper court of compliance).

### B.     NAI Fails to Present a Ripe Dispute.

NAI's discovery requests fall generally into two relevant buckets: (1) requests for information on the volume of accused NVIDIA GPUs configured in the relevant way (the "volume information"), and (2) requests for additional technical documents, internal emails, internal documents, and Amazon financial information. NAI's motion should be denied on both fronts. Amazon has already produced the volume information the parties discussed during the meet and confers. On the remaining requests, NAI has not conferred with Amazon on these requests, fails to satisfy its burden to show relevance, and fails to refute Amazon's objections.

#### 1.     Amazon Has Already Produced the Volume Material the Parties Discussed.

On June 5, 2026, Amazon explained that based on a reasonable search Amazon ***did not*** have responsive documents kept in the ordinary course of business that provided company wide data on the configurations NAI for which sought discovery. Byer Decl. ¶ 4. Nevertheless, Amazon agreed to go beyond its obligation under Rule 45 and search for and compile data to ***create*** a document that would identify the accused NVIDIA GPUs configured in the accused manner, and their volumes. Byer Decl., ¶ 4. During the parties' numerous conferrals, NAI never requested Amazon do anything else. *See* Byer Decl., Ex. A, at 2. On June 26, 2026, Amazon produced that

information. Byer Decl. ¶ 5. To the extent NAI believed additional information was called for, Amazon also offered to meet and confer with NAI to understand what, if anything, NAI contended was needed from Amazon to address NAI's technical requests (e.g., RFPs 5, 7, 8, 9, 10, and 19). To date, NAI has not identified any deficiency in Amazon's production of volume information or requested a meet and confer. Thus, Amazon has already gone beyond its duties under Rule 45 to create documents that it does not maintain in the ordinary course of business, and there is no pending dispute about the sufficiency of Amazon's production on the volume of accused NVIDIA GPU configured in one of the three allegedly relevant ways—the only issue on which the parties have conferred.

**2.    NAI fails to Present Any Ripe Dispute on the Remaining Requests.**

NAI's Motion also appears to request Amazon be compelled to provide additional, non-technical information. Although its Motion does not discuss such materials, RFP 12 requests "communications between [Amazon] and NVIDIA" relating to the accused NVIDIA products, RFP 13 requests Amazon's "internal documents" regarding the Accused Products, and RFP 14 seeks "revenue, usage, or subscription data" for Amazon services or software platforms related to the Accused Products. Dkt. 1-3, at 18–20. Amazon timely objected to these requests because, among other things, they sought information not relevant to either party's claims or defenses. Dkt. 1-5, at 17–20. To the extent NAI contends its motion covers such materials,[3] that portion of its Motion would fail for three reasons.

First, the parties have never conferred on Amazon's objections. The parties conferred over two periods of time. First, shortly after NAI served its subpoena, the parties discussed the information Amazon needed to begin searching, and NAI agreed to provide that. More than five months after serving the subpoena, NAI finally did so by identifying the relevant GPUs and the three configurations of those GPUs it claimed was relevant. Second, the parties reinitiated their

---

[3] NAI appears to have withdrawn its similar requests against Dell, so it is unclear whether NAI intends to pursue these request here, particularly since NAI's Motion makes no attempt to justify them. Byer Decl., Ex. C.

conferrals shortly after NAI's five-month delay. These discussions focused solely on the timing of Amazon producing a report showing the volume of accused GPUs configured in one of the accused ways. *See supra* § II.B. The parties never discussed requests for emails, financial information, non-technical documents, or any other topic in the nine RFPs NAI's Motion cites without discussion.

Local Rule CV-7(g) states that the Court "may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certifies the specific reason that no agreement could be made." Conferring in good faith "means that the parties must genuinely attempt to resolve the dispute without judicial intervention, and not to treat their negotiations simply as a formal prerequisite for judicial review." *Perkins v. United States Parcel Serv. of Am., Inc.*, 2024 WL 1493808, at *1–2 (W.D. Tex. 2024). Courts deny motions to compel for failing to meet and confer because they do not precisely present a dispute to the court. *Id.*; *see also Diaz v. Cuatro T Constr., Inc.*, 2021 WL 2709681, at *1 (W.D. Tex. 2021). Because the parties have *never* conferred on those other document requests, the portion of NAI's Motion addressing them should be denied.

Remarkably, NAI ignores this Court's directive on the very same issue during the June 17, 2026 hearing as it relates to NAI's subpoena to Dell. Byer Decl., Ex. B (Transcript at 24). Namely, the Court "order[ed] [Dell and NAI] to meet and confer to address what information—figure out what information is out there and what can be produced[.]" *Id.* at 23:7-9. NAI now skips the step the Court expressly ordered—a conferral "addressed discreetly to each request for production." Byer Decl., Ex. B. (Transcript at 24:8-9). It is unclear why NAI believes it can skip the same meet and confer requirement with Amazon. Indeed, during its meet and confer with Dell, NAI narrowed the scope of its requests to eliminate information it is still seeking here including emails and revenue data. Byer Decl, Ex. C, at 9–11. This highlights the policy behind the meet and confer requirement and the unnecessary burden NAI places on the Court by ignoring it.

Second, Amazon has specific objections to these requests as covering irrelevant information. For example, RFP 12 requests a broad set of communications that NAI has not demonstrated are relevant or proportional to the issues in this case. As Amazon stated in its objection, requests for email communications are particularly burdensome. Dkt 1-6, at 17–18; *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 4353076, at *2 (S.D.N.Y. 2023) (citation omitted) ("all . . . communications " that relate to multiple categories of records "is often a red flag for overbreadth and undue burden."); *Chinitz v. Realogy Holdings Corp.,* 2020 WL 6265083, at *3 (W.D. Tex. 2020) (similarly denying a motion to compel requests for "all communications" as "facially overbroad"). Indeed, even in party discovery, "[e]mail discovery is not presumptively relevant to [patent] litigation," and "'overbroad email production requests, carry staggering time and production costs that have a debilitating effect on litigation.'" *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc*., 2019 WL 121195, at *3 (C.D. Cal. 2019) (quoting Introduction to Model Order Regarding E-Discovery in Patent Cases, at p. 2 (Fed. Cir. 2011)); *see also* Standing Order Governing Proceedings (OGP) 4.4-Patent Cases, at p. 3 (noting that "the Court will not require general search and production of email or other electronically stored information (ESI) related to email (such as metadata), absent a showing of good cause"). Amazon likewise objects that its internal documents and financial records not available in any hypothetical negotiation between NAI and NVIDIA have no relevance to the underlying lawsuit. *SPH Am., LLC v. AT&T Mobility, L.L.C.*, 2016 WL 11783677, at *2 (S.D. Cal. 2016) (denying motion to compel because the party failed to show any relevance as to the *Georgia-Pacific* factors). Indeed, although NAI seeks to compel the production of financial information here, NAI dropped its request for financial data during its conferrals with Dell. Byer Decl., Ex. C, at 10.

Third, NAI admits as the moving party it has the burden to establish "that the materials are relevant or will lead to the discovery of admissible evidence," Mot. at 7, but NAI has failed to carry it. *Hobbs v. Petroplex Pipe & Constr., Inc*., 2018 WL 3603074, at *2 (W.D. Tex. 2018) (noting that the moving party has the burden to establish relevance). NAI provides a single sentence alleging that its requests are "directly relevant to proving how NVIDIA's accused GPU-

acceleration technology is deployed and used in real-world systems[,]" and "to proving how the accused products operate in commercial deployments and how Amazon's systems interact with NVIDIA's GPU-acceleration software—including CUDA, TensorRT, and PyTorch with CUDA." Mot. at 7. At most, this justifies its technical requests that Amazon has produced on. NAI is entirely silent about how internal email, internal documents, of Amazon's financial information would have any relevance.[4] NAI also suggests the Court already found all its requests to be relevant. Mot. at 8. But NAI cherry picks quotes while ignoring the Court's ultimate finding and order that the parties confer on the issues. Byer Decl., Ex. B (Transcript at 24). Because the Court did not rule on relevance, NAI cannot skirt its burden to show that relevance "discreetly to each request for production." *Id*.; *El Paso Disposal, LP v. Ecube Labs Co*., 2025 WL 1879607, at \*3–6 (W.D. Tex. 2025) (denying a motion to compel because moving party made "conclusory arguments about relevance" without sufficient explanation or consideration for the burden on the non-party).

### IV.    CONCLUSION

For the reasons stated above, the Court should deny NAI's Motion.

DATED this 1st day of July, 2026.

/s/ Darryl J. Adams

Darryl J. Adams (Texas Bar No. 00796101)
Slayden Grubert Beard PLLC
401 Congress Ave., Ste. 1650
Austin, TX 78701
Tel: 512.402.3562
Email: dadams@sgbfirm.com

*Attorney for Respondent Amazon.com, Inc.*

---

[4] Rule 45 "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty," requiring a higher showing of "substantial need." *Vinton Steel, LLC. v. Com. Metals Co.*, 2023 WL 2518881, at \*3 (W.D. Tex. 2023) (citation and internal quotation marks omitted). Amazon objected because NAI's requests asked for Amazon's confidential documents and trade secrets, Dkt. 1-6, at 5, 18–21, but NAI does not address its "substantial need" for the information.